IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIMINAL ACTION
                                  :
          v.                      :
                                  :
MICHAEL WOLFE                     :          NO. 10-616

CORRECTED MEMORANDUM

Bartle, C.J.                                             January 3, 2011

          Before the court is the motion of defendant Michael
Wolfe to suppress physical evidence and oral statements allegedly
obtained in violation of the Fourth Amendment.  Wolfe is charged
with possession with intent to distribute cocaine base ("crack
cocaine"), possession with intent to distribute crack cocaine
near public housing, possession of marijuana, possession of a
firearm in furtherance of a drug trafficking crime, and being a
felon in possession of a firearm.  See 18 U.S.C. §§ 922(g)(1),
924(c)(1)(A); 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 844(a), 860.

          The court held a pre-trial hearing to determine whether
the Fourth Amendment rights of Wolfe were violated.  At the
hearing, the government presented testimony from Philadelphia
Police Detective Jonathan Ruth and Philadelphia Police Sergeant
John Evans, while Carol Brown was a witness for her son, the
defendant.  Photographs and other exhibits were introduced
without objection.

          The testimony presented establishes that, on May 3,
2010, around 11:00 p.m., Brown made a 911 call from her home at

912 S. Orianna Street in Philadelphia.  Brown told the dispatcher that her son had been shot in the street and was now in her home in need of medical attention.  Shortly thereafter, a police radio call was dispatched announcing "male shot on the highway."

Two nearby officers, responding to the radio call, arrived at 912 S. Orianna Street, where Wolfe lived with his mother, his sister, and his mother's husband.  The officers were admitted into Wolfe's home.  Wolfe was in a chair in the living room with his hand bleeding profusely from a gunshot wound.  The officers asked Wolfe what had happened, and he told them that he had been shot in the street.  Within a few minutes, the officers assisted Wolfe out of the house so that he could be taken to Jefferson Hospital for treatment.

At the moment Wolfe was being assisted out the front door of his home, Sergeant Evans arrived at the scene.  Wolfe was bleeding and appeared to be in serious pain.  Evans immediately authorized the officers to transport Wolfe to the hospital along with his mother.  Evans then entered the house after Wolfe, Brown, and the first responding officers had left.  Evans did not speak with Wolfe or the officers who were the first responders to the scene and who had questioned Wolfe about what had happened.

Evans observed a trail of blood throughout the house. It extended to the top of the stairs on the second floor, but we find that it did not continue beyond that point.  Nonetheless, Evans and his fellow officer roamed throughout the second floor. They entered a second floor rear bedroom where they saw a clear

plastic bag on the bed which they reasonably believed to be crack cocaine.  It turned out that this was Wolfe's room.

After discovering what he believed to be illegal narcotics, Evans called the police station and requested a search warrant.  He ordered the officers on the scene to secure the house so that no one would be allowed to enter or exit.  Evans waited outside the bedroom until Detective Ruth arrived with the search warrant.

At that point, the officers entered the bedroom and commenced a full search pursuant to the warrant.  They found and seized a clear plastic bag containing a total of 1.422 grams of crack cocaine divided among green-tinted packets, a smaller clear plastic bag with a single large clump of crack cocaine weighing 3.332 grams, numerous empty green-tinted packets, a red plastic zipper-top bag containing 1.81 grams of marijuana, a clear plastic bag containing 0.7 grams of marijuana, and a Hi Point (Beemiller, Inc.) Model CF380 .380 caliber semi-automatic pistol with its serial number obliterated.  The pistol was loaded with eight live .380 caliber rounds.

While this search was occurring at 912 S. Orianna Street, Wolfe was brought to Jefferson Hospital for treatment of his hand.  As proffered by the government, after doctors treated Wolfe's injury and released him, police accompanied Wolfe to the South Detectives Division to be interviewed as a crime victim. Wolfe gave his statement about the shooting. Police officers then informed Wolfe of the results of the search, placed him under

arrest, and read him the _Miranda_ warnings.  Wolfe made statements acknowledging ownership of the narcotics and the gun, as well as stating that the crack was intended for sale.  Wolfe has not disputed these facts as proffered by the government.

Wolfe argues that the narcotics and pistol must be suppressed because they are products of an illegal, warrantless search.  He contends that the police first searched the premises without a warrant and without the permission of any of the residents that were present at the scene.  He also maintains that his statements to police should be suppressed because they were solely the product of the illegal search.  See _Wong Sun v. United States_, 371 U.S. 471, 484-85 (1963).

The Fourth Amendment provides that, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated."  U.S. Const. amend. IV.  Searches and seizures conducted without a warrant are per se unreasonable under the Fourth Amendment unless they fall within a few specifically established exceptions to the warrant requirement.  See _Thompson v. Louisiana_, 469 U.S. 17, 19-20 (1984).

The government relies on the exception that police officers may conduct a warrantless search if they confront exigent circumstances which pose a grave danger to their own lives or the lives of others.  See _Warden, Md. Penitentiary v. Hayden_, 387 U.S. 294, 298-99 (1967).  Such a warrantless search is constitutional only if there exists at the time "the existence

-4-

of probable cause and such other circumstances which would cause a reasonable person to believe that the exigencies of the situation made that course imperative." United States v. Moskow, 588 F.2d 882, 892 (1978). The burden of proving the exigency of the circumstances rests on the government. See Welsh v. Wisconsin, 466 U.S. 740, 750 (1984).

Here, the first responding police officers confronted an emergency situation that would justify their entrance to 912 S. Orianna Street in order to locate the victim of the reported shooting, although they had consent to enter to tend to Wolfe. Nonetheless, once they saw the bleeding Wolfe in the living room, all exigent circumstances of which they were aware ceased, and any right to search the home was extinguished. See Mincey v. Arizona, 437 U.S. 385, 388-89, 393 (1978). The first responding officers, as far as the record establishes, remained on the first floor with Wolfe. It was not until they had left the house with Wolfe that Sergeant Evans and other officers entered and began their search. By that time, there was no immediate or compelling need to insure the safety of the officers or anyone else by entering the second floor beyond the top of the stairs.

The government argues that police officers needed to conduct a sweep of the second floor to confirm that no other victims and no assailants remained in the house. However, there was no indication, let alone probable cause for a reasonable person to believe, that additional victims existed or that any assailant was present inside 912 S. Orianna Street. The only

information the officers had was that there was one victim, namely Wolfe, who had been shot outside of his house. Both Brown and Wolfe had reported to the police that he was shot outside and subsequently returned to the house to seek refuge. Although Sergeant Evans did observe a trail of blood leading from the living room to the second floor, it ended at the top of the stairs. The police had taken numerous photographs of the scene, including the blood on the carpet on the first floor and the stairs. Significantly, no photograph was introduced into evidence showing blood anywhere on the second floor except, as noted, at the very top of the stairs.

Accordingly, we find that the search of the second floor of 912 S. Orianna Street violated the Fourth Amendment. There were no exigent circumstances to justify entry onto the second floor or inspection of the second floor rear bedroom where the drugs were found. We will grant Wolfe's motion to exclude the evidence found during that initial search, that is the clear plastic bag containing seventeen green-tinted packets of crack weighing approximately 1.422 grams total.

The government has conceded that if the initial search of 912 S. Orianna Street was unconstitutional, the search made pursuant to the warrant and Wolfe's subsequent statements at the police station also fail as fruit of the poisonous tree. See United States v. Wong Sun, 371 U.S. 471, 484-85 (1963). Therefore, we will also exclude the additional clear plastic bag containing a chunk of crack weighing approximately 3.332 grams,

-6-

the unused green-tinted plastic packets, the bags of marijuana, the Hi Point Model CF380 0.380 caliber pistol, and Wolfe's statements to police about the ownership of the narcotics and gun.

The motion of defendant Michael Wolfe to suppress physical evidence and statements will be granted.